IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 08-cv-01878-MSK-KLM

TWIN CITY FIRE INSURANCE COMPANY, and
SRS CALIFORNIA OPERATIONS, LLC., d/b/a NOBLE LOGISTIC SERVICES,

       Plaintiffs,

v.

JOANN Z. KAZEL d/b/a JSC LOGISTICS, and
NATIONAL INDEMNITY COMPANY,

       Defendants.

_____

**OPINION AND ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT
IN FAVOR OF DEFENDANT NATIONAL**
_____

**THIS MATTER** comes before the Court pursuant to Plaintiff Twin City Fire Insurance Company's ("Twin City") Motion for Summary Judgment **(# 69)**, Defendants Kazel ("JSC") and National Indemnity Company's ("National") response **(# 73)**, and Twin City's reply **(# 78)**; and National's Motion for Summary Judgment **(# 79)**, Twin City's response **(# 82)**, and National's reply **(# 83)**.

## FACTS

Unless otherwise noted, the operative facts are undisputed, or the evidence has been construed most favorably to the non-movant.

Plaintiff SRS California Operations ("Noble") hired JSC to make deliveries on Noble's behalf. On February 16, 2006, JSC's employee, Dustin Lund, was delivering products when he

1

was involved in a vehicle accident with Michael Bailey. Mr. Bailey was killed.

Mr. Bailey's heirs brought suit against both Noble and JSC, among others. Invoking a provision in the insurance contract between Noble and JSC, Noble requested that JSC defend and indemnify Noble in the Bailey suit, but JSC refused. Noble also sought defense and indemnification from National, JSC's insurer, on the ground that JSC's policy with National named Noble as an additional insured.[1] National also refused to defend or indemnify Noble in the Bailey suit, noting that the vehicle Mr. Lund had been driving at the time was privately owned by an unrelated party and was not listed in the schedule of vehicles insured under National's policy. In 2008, Noble entered into a settlement with the Baileys, and Twin City, Noble's insurer, paid the settlement.

The procedural alignment of this case has changed somewhat from when it was first commenced, but it is sufficient to observe at this point that Twin City, as subrogee of any claims by Noble, asserts **(# 57)** claims against National for breach of contract, equitable subrogation, and equitable contribution.

Twin City and National now move for summary judgment against each other. The crux of the parties' dispute concerns the effect of a document referred to as the "Form E" endorsement filed by JSC. To obtain a permit to engage in intrastate property carriage, carriers are required under Colorado law to file proof that they have sufficient financial means to compensate persons who may be injured in the course of the carrier's operations. 4 C.C.R. 723-

---

[1] This point may be disputed. National has tendered an affidavit from Darla Sorensen, who states that "[Noble] never tendered a claim for coverage under the [National] policy prior to the inception of the above-captioned lawsuit." However, the resolution of this factual dispute would not alter the analysis herein.

6, § 6007. Sufficient financial responsibility results from the carrier either obtaining liability insurance coverage in specified amounts or the carrier posting of a surety bond. The Form E endorsement, filed by the carrier, identifies the insurance policy that the carrier has obtained and includes language which states, in relevant part, that the underlying insurance policy is "amend[ed] . . . to provide insurance for automobile injury and property damage liability in accordance with the provisions [of § 6700] to the extent of the coverage and limits of liability required thereby." Twin City argues that, although the policy between National and JSC nominally failed to extend to the truck being driven by Mr. Lund, the effect of the Form E endorsement is to amend the policy to require coverage of that vehicle.

## ANALYSIS

### A. Standard of review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989).

Although cross-motions for summary judgment are most often determined independently, here the parties agree as to all relevant facts and both seek a determination as a matter of law. Thus, they are, in essence motion for a determination on stipulated facts and thus, the Court's

duty is to apply the law to the agreed-upon facts and determine, as a matter of law, which party is entitled to judgment.

**B. Interpretation of Form E endorsement**

The parties do not dispute that, on its face, the policy between National and JSC does not extend coverage to the vehicle being driven by Mr. Lund at the time of the accident.[2] Thus, the first question posed is whether the terms of the Form E endorsement effectively extended National's coverage obligations beyond those expressly stated in the policy so as to include the accident involving Mr. Lund.

Twin City points out that Colorado law requires carriers to "ensure that insurance . . . covers all motor vehicles which may be operated by or for the . . . carrier . . . regardless of whether such motor vehicles are specifically described in the policy." 4 C.C.R. 723-6, §6007(c)(III). Twin City argues that the effect of this statute when combined with the language of Form E endorsement extended National's policy to provide benefits to Mr. Lund because he was operating a truck for JSC, even though the truck was not expressly covered by the policy. (By extension, once coverage extended to Mr. Lund's vehicle, JSC became an "insured" on the policy for purposes of the accident because of Mr. Lund's "covered auto," and, Noble argues, Noble then became an insured by being "liable for the conduct of [JSC,] an insured."). In

---

[2]Twin City's motion makes a perfunctory argument that "Noble . . . qualifies as an additional insured under the . . . policy issued to JSC." It contends that coverage defines an "insured" to be "[JSC] for any covered 'auto'," and extends to "anyone liable for the conduct of an 'insured.'" Twin City then argues that "it was the actions of . . . JSC [and its employee, Mr. Lund] that caused the death of Michael Bailey," thus making "Noble . . . responsible for the conduct of [National's] named insured." Twin City fails to acknowledge the undisputed fact that the truck being driven by Mr. Lund was not a "covered auto." Thus, JSC was not an "insured" for that risk under the terms of the policy, and by extension, Noble was not being held liable for the actions of "an insured."

4

assessing this contention, the Court focuses upon two cases upon which the parties rely.

In *Shamrock Taxi of Fort Collins, Inc. v. North American Specialty Ins. Co.*, 2006 WL 722172 (D. Colo. Mar. 22, 2006) (slip op.), the court specifically considered the operation of the Form E endorsement under Colorado law. There, the plaintiff operated separate taxi, shuttle van, and limousine services. Each type of service – taxi, shuttle van, or limousine – was operated under a separate business name, and was insured by separate policies applying only to the vehicles for the appropriate service, accompanied by a Form E endorsement attached to each policy. A vehicle belonging to the taxi service was involved in an accident, and the heirs of the victim of that accident brought suit against Shamrock. In seeking insurance coverage for the suit, Shamrock not only notified the insurer covering the taxi service, but also sought coverage from the insurer writing the policy for the limousine service, on the theory that the Form E endorsement attached to the limousine service policy operated to extend the limousine policy to cover taxi service vehicles as well. In granting summary judgment to the limousine insurer, Judge Babcock rejected the argument that a Form E endorsement "obligate[s] an insurer to provide coverage for vehicles operated . . . under a different name and, in this case, permit number." Specifically, Judge Babcock stated:

> Here, the Form E that Northland filed with the Colorado PUC expressly identified Shamrock Limousine as its insured. The taxi cab involved in the Accident was not being operated under this trade name or under the permit issued for the operation of Shamrock's luxury limousines. Based on its filing of the Form E with respect to [the limousine policy], Northland may be obligated to extend coverage to any vehicle being operated by Shamrock under the trade name of Shamrock Limousine . . . regardless of whether the particular vehicle was specifically listed under Northland's policy. There is simply no authority, however, to support an extension of the coverage under the Northland Policy to the taxi cab involved in the Accident based on the filing of this

5

> form. Moreover, such an extension is unwarranted in view of the
> fact that Shamrock had procured other insurance which expressly
> covered the taxi cab in question. . . .

*Id.* at *4.

Both parties here find language to their liking in the quoted passage. Twin City points to the sentence stating "Based on its filing of the Form E . . . Northland may be obligated to extend coverage to any vehicle being operated by Shamrock under the trade name of Shamrock Limousine . . . regardless of whether the particular vehicle was specifically listed under Northland's policy." This statement, however, is dicta; the court was not faced with the question of whether a <u>limousine</u> that was otherwise excluded from the limousine policy was deemed to be covered by operation of the Form E endorsement, and thus, the court's observation as to what the insurer "may be obligated" to do in such circumstances is simply speculation, not a ruling on a point of law. Nevertheless, the statement appears to be a correct reading of 4 C.C.R. 723-6, §6007(c)(III), requiring insurers to cover <u>all</u> vehicles used by a particular carrier, regardless of whether they are nominally included in the policy or not.

National points to the final sentence of the quoted passage, in which the court observed that "extension [of the limousine coverage to include the taxi] is unwarranted in view of the fact that Shamrock had procured other insurance which expressly covered the taxi cab in question." As discussed in more detail below, this statement appears to be a reasonable interpretation of the operation of the public policy concerns underlying Colorado law on this point. However, as the Court will explain in a moment, it is factually inapposite in this case. There is no indication from the parties that JSC "had procured other insurance which expressly covered" the truck being operated by Mr. Lund.

6

National's argument is also supported by the reasoning in *Carolina Casualty Ins. Co. v. Yeates*, 584 F.3d 868 (10th Cir. 2009). There, the court assessed the operation of the largely-similar MCS-90 endorsement, a certification of financial responsibility for <u>inter</u>state motor carriers required by federal law.[3] In *Carolina*, the defendant was injured in an accident involving a truck driver whose employer was insured under two separate policies, one issued by State Farm and one by the plaintiff. The State Farm policy expressly covered the truck in question, but the Carolina policy did not, although the Carolina policy was accompanied by an MCS-90 endorsement that required Carolina to pay "any final judgment recovered against [the carrier] for public liability resulting from . . . use of motor vehicles." The trial court denied Carolina's request for a declaration that the MCS-90 endorsement operated only as excess insurance; instead, the trial court found that existing 10th Circuit precedent rendered Carolina's coverage, as augmented by the MCS-90 endorsement, primary coverage extending to the truck involved in the accident. Carolina appealed, and the 10th Circuit took the opportunity to abandon its prior precedent and join the majority view that an MCS-90 endorsement extends otherwise non-existent coverage only when the carrier's other insurance coverage is insufficient to satisfy

---

[3]Like the requirements of Form E, the MCS-90 endorsement is a "financial responsibility" requirement that the carrier's insurer "pay within policy limits any judgment recovered . . . resulting from the carrier's negligence, whether or not the vehicle involved in the accident is specifically described in the policy." *Carolina*, 584 F.3d at 873-74. As with the Colorado scheme, the carrier may satisfy this obligation through either an insurance policy or a surety bond (or may self-insure). *Id.* at 874. National argues that the federal regulatory scheme is sufficiently different from Colorado's scheme such that the Court should not consider law relating to the MCS-90 in determining how to implement Colorado's scheme. The Court finds National's proffered distinctions between the two schemes to be inconsequential, and finds that the 10th Circuit's interpretation of the substantially-similar federal regulatory scheme in *Carolina* provides persuasive guidance in interpreting the closely-modeled Colorado scheme so as to achieve the purposes intended by the State of Colorado.

the claim (*i.e.* it operates as excess insurance as to risks not expressly covered by the policy). 584 F.3d at 871. In doing so, the 10th Circuit reasoned that the purpose of the MCS-90 endorsement was simply to provide a surety, guaranteeing that any judgment obtained by victims against the carrier would be paid. *Id.* at 883-84. Where the victim was able to fully collect any damages from other insurers covering the carrier for the loss, there was no need to artificially create insurance coverage under the MCS-90 endorsement where it otherwise would not exist.

National believes that *Carolina* is availing, pointing out that Noble's own insurer – Twin City – paid Noble's settlement with the Baileys in full. Thus, reasons National, the public interest in affording a victim full restitution was satisfied and there is no reason why Noble should , in turn, be able to recover based upon the Form E endorsement (the MCS-90 equivalent).

This argument extends *Carolina* somewhat beyond its terms. *Carolina* involved a single carrier, insured under two separate policies. Because the victim was fully able to satisfy his judgment <u>against that carrier</u> from the carrier's first policy, there was no reason to artificially extend the scope of the carrier's second policy.

The situation in this case at hand does not involve one carrier with two policies, but rather, two carriers each with their own policy. More importantly, the Baileys' lawsuit involves separate claims against Noble and JSC. The Baileys alleged that both Noble and JSC were each responsible for Mr. Lund's actions under the doctrine of *respondeat superior*, and that both Noble and JSC each aided violation of Colorado regulations governing cargo hauling and civilly conspired to facilitate Mr. Lund's violation of such regulations. Arguably, one might read the *respondeat superior* claim to assert that Noble is vicariously liable for <u>JSC's</u> conduct, and that

8

JSC is responsible for Mr. Lund's actions, such that one could say that Noble was being sued solely for JSC's wrongs (and thus, should be allowed to tap JSC's insurance coverage accordingly). But the aiding and abetting and civil conspiracy claims against Noble are not vicarious in nature; they turn on allegations of Noble's own wrongful conduct. As such, it would be unfair to shift the entire cost of Noble's settlement with the Baileys to JSC's insurance carrier.

Having concluded that both *Shamrock* and *Carolina* present facts that are distinguishable from those in this case, the Court finds neither dispositive and returns to general principles enunciated in their reasoning.

*Shamrock*, albeit in dicta, reinforces the plain meaning of the language of 4 C.C.R. 723-6, § 6007(c)(III). It suggests that, where an insurance policy purports to cover only some of the vehicles used by a particular business entity, a Form E endorsement may operate to require the insurer to extend coverage to other non-listed vehicles that are actually used by the business entity. There is no apparent reason why this Court should not, at least initially, apply the regulatory language as written. Thus, the Court finds that, by operation of the Form E endorsement, National is required to extend coverage under its policy to Mr. Lund's vehicle.

It does not necessarily follow, however, that Noble (or Twin City, as Noble's subrogee), thus becomes an "insured" under that policy. As stated previously, Noble's argument that it can claim coverage under National's policy with JSC is based on an extended chain of reasoning: <u>if</u> Mr. Lund's vehicle becomes covered by the policy (by operation of the Form E endorsement), <u>then</u> JSC becomes an "insured" under the policy for purposes of the accident, and <u>then</u> Noble becomes an "insured" under the policy (to the extent it is alleged to be "liable for the conduct of [JSC,] an insured"). Even if the first conditional is satisfied – that Form E extends coverage to

9

Mr. Lund's vehicle – the remainder of the argument is not necessarily valid. In *Carolina*, the 10th Circuit concluded that the invocation of the substantially-similar MCS-90 endorsement does not operate to reform the entire insurance policy. Put another way, the Court does not automatically re-interpret the entire policy even though it extends broader coverage of particular vehicles. Rather, the endorsement should be applied only to read out "those clauses in the policy that would limit the ability of a third party victim to recover for his loss." 584 F.3d at 883. In other words, the Court applies the Form E endorsement only to ensure that the Baileys are able to obtain complete satisfaction of their claims.

They have done so – they received full satisfaction of their claims against JCS through National, and they received the full amount of the settlement with Noble through Noble's insurer, Twin City. Once the Baileys have been fully compensated, the public purpose behind the financial responsibility policy endorsements is satisfied, and the need to apply the endorsement ceases. National aptly cites several cases that stand for the proposition that:

> a distinction [is drawn] between, on the one hand, claims made by injured members of the public as against insureds and their insurers . . . and, on the other hand, claims made by insurers against their insureds or other insurers for reimbursement <u>after</u> injury members of the public have received the benefit of coverage. In deciding the first class of claims, the cases have disregarded provisions in the policy which are inconsistent with the indemnity required in the endorsement. However, in deciding the second class of claims . . . consistent case law has considered all terms of all related policies without regard to the MCS-90 endorsement.

*Canal Ins. Co. v. Distribution Services, Inc.*, 176 F.Supp.2d 559, 565 (E.D.Va. 2001); *see also T.H.E. Ins. Co. v. Larsen Intermodal Services, Inc.*, 242 F.3d 667 (5th Cir, 2001), *and Occidental Fire & Cas. Co. of No. Carolina v. International Ins. Co.*, 804 F.2d 983 (7th Cir. 1986).

This reasoning presents an interesting scenario: as long as the Baileys' suit was extant, the Form E endorsement would apply, forcing National to ignore that portion of its policy that excluded coverage to JCS because of Mr. Lund's use of a non-covered vehicle. Arguably, indulging in that legal fiction compelled an interpretation of the policy that would deem Noble to be an "insured" under National's policy as well, thus requiring National to tender a defense to Noble upon Noble's request.[4] Once Noble settled the Baileys' claims against it and tendered the payment called for in the settlement, extension of the Form E endorsement was no longer necessary. Noble's status under the National policy reverted to the status it had under the policy as written – non-insured because of Mr. Lund's use of a non-covered vehicle. No longer susceptible to being an "insured" under the policy, Noble loses the rights that come with such status, including the right to demand indemnification from National. Under this scenario, Noble's claim (or, perhaps, Twin City's claim in subrogation) against National in this suit would be limited to seeking reimbursement of the costs of defending the Baileys' suit, up to the date of settlement, but the claim would not entitle Noble/Twin City to seek indemnification from National of the amounts paid in settlement. Put simply, the extension of the Form E endorsement is intended to benefit the injured party but not the insurer that compensates the injured party.

But even that claim by Noble/Twin City is problematic. The Form E endorsement contains express language that dooms any claim Noble/Twin City could assert against National. in any event. That language states "insured agrees to reimburse the company for any payment

---

[4] Although there may be a factual dispute as to whether Noble made such a request on National, that factual dispute need not be resolved.

made by the company which it would not have been obligated to make under the terms of the policy except by reason of the obligation assumed in making [the Form E] certification." In other words, because Noble would not be considered an "insured" under the policy as initially written, and could only gain that status by invoking the Form E endorsement, National is entitled under the endorsement to demand that Noble reimburse National for any sums that it would have to pay out to Noble, rendering the entire exercise a wash.

Such an outcome is entirely consistent with the reasoning enunciated in *Carolina* – the endorsement is intended to protect only <u>victims</u>, not <u>insureds</u>. By entitling the insurer to reimbursement from the insured of sums paid out solely because of the invocation of the endorsement, the deal struck between the insurer and insured is preserved. The insurer pays only for those risks the policy language required it to assume, and the insured is ultimately held responsible for those risks that fell outside the terms of the policy the insured negotiated. Here, National's policy called for National to pay only for those harms resulting from the use of specifically-identified covered vehicles. Because Mr. Lund was not operating such a vehicle, National has no liability to pay for such harms. Thus, even if Noble/Twin City could somehow claim "insured" status under the policy, as modified by the Form E endorsement, National would nevertheless be entitled to recover any funds paid to Noble/Twin City so as to restore it to the position it would have been in had the policy terms been applied as written. This effectively renders Noble/Twin City's claims moot.

## CONCLUSION

For the foregoing reasons, the Court agrees with both parties that there are no genuine disputes of fact requiring trial on the claims between Twin City and National. In that respect,

both parties' Motions for Summary Judgment **(# 69, 79)** are **GRANTED**. Based on the undisputed facts, the Court finds that National is entitled to judgment as a matter of law on Twin City's claims. Judgment consistent with this conclusion will enter at the conclusion of this case.

Resolution of the dispute between Twin City and National resolves some, but not all, of the claims asserted in this action. Noble has asserted claims against both National and JCS. The reasoning in this Order theoretically disposes of any claim that Noble might assert against National, but in the absence of a formal disposition of those claims, they remain extant.

In addition, Noble (and/or Twin City) asserts claims against JCS. Twin City's summary judgment motion indicates that Noble "has been dissolved," making it somewhat unclear to what extent, if any, Noble intends to or can pursue claims against JCS. Twin City's claims against JCS appear to remain unresolved. In addition, National has asserted cross-claims against Noble, but it is not clear to what extent National intends to press such claims given Noble's alleged dissolution.

Because there remain a number of claims to be addressed, the Court will conduct a non-evidentiary hearing on **September 13, 2010** at **4:30 p.m.** for the purpose of determining which claims (and parties), if any, remain in this suit and, if any remain, how the parties anticipate presenting the remaining claims.

Dated this 19th day of July, 2010

                                 **BY THE COURT:**

                                 */s/ Marcia S. Krieger*
                                 _____

                                 Marcia S. Krieger
                                 United States District Judge